Nos. 13-402, 13-917, 13-972, 13-935, 14-174, 14-93, 14-175, and 14-47

(Judge Thomas Wheeler)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

————————

ALTA WIND I OWNER-LESSOR C, *et al.*,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

————————

DEFENDANT'S MOTION TO AMEND THE PLEADINGS
TO ADD COUNTERCLAIMS BASED ON EXPERT OPINION

————————

**TABLE OF CONTENTS**

Table of Authorities ............................................................................................................ ii

Background and Procedural History ...................................................................................... 2

    I.    Plaintiffs' Applications ................................................................................................ 2

    II.   This Litigation ............................................................................................................. 3

Argument ............................................................................................................................. 5

    I.    Defendant's Counterclaims ......................................................................................... 6

    II.   The Court Should Grant Leave to Amend the Pleadings .......................................... 7

        A.    Defendant's Counterclaims Do Not Alter the Course of Litigation ............................. 9

        B.    Defendant Is Pleading Its Counterclaims Without Undue Delay .............................. 10

Conclusion ........................................................................................................................ 11

Appendix

    Defendant's Amended Answer and Counterclaims for No. 13-402
    Defendant's Amended Answer and Counterclaims for No. 13-917
    Defendant's Amended Answer and Counterclaims for No. 13-972
    Defendant's Amended Answer and Counterclaims for No. 13-935
    Defendant's Amended Answer and Counterclaims for No. 14-174
    Defendant's Amended Answer and Counterclaims for No. 14-93
    Defendant's Amended Answer and Counterclaims for No. 14-175
    Defendant's Amended Answer and Counterclaims for No. 14-47

## TABLE OF AUTHORITIES

**Cases**

*Barrett Ref. Corp. v. United States, 242 F.3d 1055 (Fed. Cir. 2001)* ............................................. 6

*Lone Star Ladies Invest. Club Club v. Schlotzsky's Inc.*, 238 F.3d 363 (5th Cir. 2001) ................. 8

*Foman v. Davis,* 371 U.S. 178 (1962) ..................................................................................... 8, 9

*Hess v. United States*, 210 Ct. Cl. 483 (1976) ............................................................................. 8

*Howey v. United States*, 481 F.2d 1187 (9th Cir. 1973) ............................................................... 8

*Katzin v. United States*, 115 Fed. Cl. 618 (2014) ........................................................................ 8

*King v. United States*, 119 Fed. Cl. 51 (2014) ......................................................................... 8, 9

*Mayeaux v. La. Health Servs. & Indem. Co.,* 376 F.3d 420 (5th Cir.2004) ................................... 8

*Meyer Grp., Ltd. v. United States,* 115 Fed. Cl. 645 (2014) ......................................................... 9

*Pressure Products Med. Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308 (Fed.Cir. 2010) .......... 8

*St. Paul Fire & Marine Ins. v. United States*, 31 Fed. Cl. 151 (1994) ...................................... 8, 9

*State of Alaska v. United States*, 15 Cl. Ct. 276 (1988) ................................................................ 8

*United States v. Bank of the Metropolis*, 40 U.S. 377 (1841) ....................................................... 6

*United States v. Wurts*, 303 U.S. 414 (1938) .............................................................................. 6

*Veridyne Corp. v. United States*, 86 Fed. Cl. 668 (2009) ............................................................. 8

**Statutes**

26 U.S.C. § 45(a)(2)(A)(i) ......................................................................................................... iii

26 U.S.C. § 45(d)(1) ................................................................................................................... 2

28 U.S.C. § 1503 ........................................................................................................................ 6

28 U.S.C. § 2508 ........................................................................................................................ 6

**Rules**

Fed. R. Civ. P. 15(a) .................................................................................................................. 7

ii

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

_____

Nos. 13-402, 13-917, 13-972, 13-935, 14-174, 14-93, 14-175, and 14-47

(Judge Thomas Wheeler)

ALTA WIND I OWNER-LESSOR C, *et al.*,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

_____

DEFENDANT'S MOTION TO AMEND THE PLEADINGS
TO ADD COUNTERCLAIMS BASED ON EXPERT OPINION

_____

Pursuant to RCFC 15(a)(2), defendant respectfully moves the Court to amend its answers in the above-captioned, consolidated cases, in order to permit it to plead counterclaims based on facts developed during discovery and its expert witness's valuation of plaintiffs' eligible basis under §1603. Amended pleadings for each of the eight consolidated cases are attached as appendices to this motion. Plaintiffs have indicated they will not consent to such amendment.

These consolidated cases concern the proper valuation of the specified energy property acquired by the twenty plaintiffs in various transactions involving the six neighboring wind-power generating facilities in California, named Alta Wind I-VI (the Alta Wind projects), that are at issue in this *de novo* proceeding. Prior to the completion of fact discovery and the issuance of expert reports, defendant could not specifically determine the appropriate valuation of the specified energy property and, thus, plaintiffs' eligible basis under § 1603 of the American Recovery and Reinvestment Tax Act ("ARRTA"), P.L. 111-5 (2009), as amended by § 707 of

1

the Tax Relief, Unemployment Insurance Reauthorization, and Job Creation Act of 2010, P.L. 111-312 (2010) ("Section 1603").  Now that fact discovery has been completed and our expert, Dr. John Parsons, has opined on the proper valuation of the eligible basis, the United States requests the Court's leave to amend its answers to add a counterclaim against each plaintiff for the difference between the amount that plaintiff received from the Department of the Treasury (Treasury) and the amount it is eligible to receive.  These counterclaims, long a possibility in this litigation, would not alter or unduly prejudice the course of proceedings; they will allow the Court to resolve all the issues raised in this litigation.  As a result, the Court should permit the amendment.

**BACKGROUND AND PROCEDURAL HISTORY**

The twenty plaintiffs in these suits, all represented by the same counsel, are various underlying owners of wind energy projects.  Plaintiffs all applied for funds for the wind projects under § 1603.  That provision, enacted as part of the 2009 Stimulus Plan, provided for a cash payment in lieu of a tax credit (under 26 U.S.C. 48) for certain qualified investments in renewable energy property.

## I.    Plaintiffs' Applications

For the Alta Wind projects, plaintiffs applied for § 1603 payments alleging they owned qualified wind facilities under § 1603(d)(1) and 26 U.S.C. § 45(d)(1) (defining "wind facility"). Under the statute, eligible applicants are entitled to payments equal to 30% of their eligible cost basis in qualifying property.  § 1603(b)(2)(A).  In their applications, plaintiffs took the position, as they do in these cases, that their eligible bases were essentially determined by their purchase prices for the projects, subject to allocation of those purchase prices between eligible and ineligible property.

2

After considering plaintiffs' applications, Treasury, which administers the §1603 program, awarded §1603 payments to plaintiffs based upon cost certifications of Terra-Gen — the entity that had acquired the wind projects from their original developers and owner, and had owned the projects just prior to the sales to plaintiffs. While basing the awards on these cost certifications, Treasury informed the applicants that it was using those cost certifications not because it had concluded that they correctly characterized the eligible basis of the properties in question, but because Treasury considered the amounts in the cost certifications to be "more consistent" with the eligible basis of each energy property than the applicants' claims.[1] That is, Treasury did not make its own precise determination of eligible basis, as is now possible with the benefit of discovery that has occurred in this litigation.

The awards based on the cost certifications were lower than the payments sought by the applicants. Specifically, Treasury made payments of just under $555 million to the applicants, lower than the total claimed payments of $781 million. The $226 million difference, less amounts related to the applications of non-party GE Capital Corporation,[2] yields the $208 million that plaintiffs seek in these related cases.

## II.    This Litigation

From the outset, the parties have consistently described the issues presented in this consolidated action. In the Joint Preliminary Status Report, the parties identified the main issue presented as follows:

> This case concerns the proper determination of the cost basis for
> the "specified energy property" of six wind power generating

---

[1] This quote appears in the Treasury award letter for each of the Alta Wind projects.

[2] GE Capital Corporation is the underlying owner of Alta Wind I Owner-Lessor A and Alta Wind I Owner-Lessor B, which are not parties to this litigation.

3

> facilities, in which Plaintiffs own interests and applied for Section
> 1603 Payments (the "Alta Facilities").

JPSR (Dkt. 32, ¶ VII).   The parties further identified four sub-issues for the Court, the fourth of

which is relevant to this motion:

> D.      If (i) the amount a Plaintiff paid to acquire its interest in the
> relevant wind power project is not determinative as to cost basis;
> or (ii) a Plaintiff's allocation of its purchase price does not
> properly determine the cost basis, then how should that Plaintiff's
> cost basis be determined, and what is the amount of that Plaintiff's
> cost basis.

(*Id.*)

Although plaintiffs filed early motions for summary judgment (Dkt. 19), taking the

position that their eligible bases could be determined without factual development, the Court

agreed with defendant that full discovery was required to develop a factual record.  (Dkt. 23

[Def. Mot. under RCFC 56(d)], (Dkt. 37 [Order Granting Def. Mot.].)  In the briefing on its

motion to stay plaintiffs' early summary judgment motion, defendant described the issues

similarly to the JPSR:

> In each of these cases, the purchase price was paid not for a single
> asset or piece of property, but rather for a suite of assets.  Some of
> these assets constitute eligible property under § 1603, and some do
> not.  Consequently, a determination must be made of what portion
> of the purchase price is *eligible* cost basis.

(Dkt. 23, p. 6-7).  Defendant also explained that because Treasury was unable to "engage in the

type of in-depth discovery and review that is necessary to present a case to a court for decision,"

it had not made its own determination of eligible cost basis at the administrative level.  As a

result, defendant noted, discovery in this case "could even reveal that the initial awards from

Treasury exceeded the correct amount to which the plaintiffs were actually entitled, necessitating

a counterclaim and recovery of such additional amount."  (Dkt. 23, p. 11 n.4.)

After the stay, the United States conducted extensive discovery into the wind farm projects at issue in this litigation and into the factual circumstances of plaintiffs' transactions. In particular, defendant gathered numerous background documents from plaintiffs' underlying owners (MUFG Union Bank, Citibank, Google, and EverPower), non-party applicant GE Capital Corporation, Terra-Gen Power (the developer), and multiple involved third-parties, including advisors (KPMG, Marathon Capital LLC, and McManus & Miles), appraisers (Duff and Phelps and DAI Management Consultants), the utility (Southern California Edison), and the prior developers (Allco Finance Group [which did not provide documents] and Oak Creek Energy Systems). Defendant also conducted depositions of key parties and individuals. All told, the fact discovery period permitted defendant to flesh out the factual circumstances of the transactions and the details of the wind farms, which are necessary to determining the appropriate valuation of plaintiffs' eligible property.

After fact discovery concluded on September 18, 2015, defendant's expert witness, Dr. John Parsons, conducted a valuation of the specified energy property acquired by plaintiffs, which he explained in his initial and rebuttal expert reports. These were exchanged on October 23, 2015, and December 4, 2015, pursuant to the expert discovery schedule. Dr. Parsons' findings form the basis of the United States' counterclaims.

## ARGUMENT

These consolidated cases constitute a *de novo* proceeding to determine the valuation of the specified energy property that constitutes plaintiffs' eligible bases in their various wind farms for the purpose of calculating the §1603 payments to which they are entitled. To the extent the Court ultimately determines that the appropriate eligible basis for any of the plaintiffs is one that results in a §1603 award amount lower than the amount that plaintiff already received, the plaintiff will owe the resulting overpayment to the United States. For judicial and administrative

economy, the Court should be able to order judgment in favor of the United States on such amount.  The proposed amended pleadings simply add counterclaims that would permit the Court to do so.  Leave to amend is to be freely granted, and thus the United States' counterclaims should be permitted.

## I.     Defendant's Counterclaims

As part of its duty to protect the public fisc, the United States has the authority to recover overpayments of federal funds.  It is well-established that the United States is entitled by appropriate action to recover funds that have been "wrongfully, erroneously, or illegally paid." *United States v. Wurts*, 303 U.S. 414, 415-16 (1938); *see also Barrett Ref. Corp. v. United States,* 242 F.3d 1055, 1063-64 (Fed. Cir. 2001).  This sovereign right is "'independent of statute.'"  *Id., citing United States v. Bank of the Metropolis*, 40 U.S. 377, 401 (1841).

The Court of Federal Claims has jurisdiction over counterclaims by the United States under 28 U.S.C. § 1503 ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any set-off or demand by the United States against any plaintiff in such court.").  Thus, under 28 U.S.C. § 2508, in a case involving a counterclaim of the United States "against any plaintiff making claim against the United States in said court, the court shall hear and determine such claim or demand both for and against the United States and plaintiff."

Under the §1603 program, any funds disbursed by Treasury in excess of 30% of the eligible cost basis of the applicants' specified energy property are erroneous overpayments. Accordingly, the United States may take appropriate action to recover them, including counterclaiming in an on-going litigation with the applicants.[3]

---

[3] Indeed, various rules and guidelines in connection with the §1603 Program contemplate that such recoveries will occasionally be necessary.  The Terms and Conditions agreed to by

(continued...)

6

Here, after factual development in discovery, our expert economist determined appropriate valuations for the plaintiffs' eligible basis in the six wind farms at issue here. Those valuations result in corresponding § 1603 award amounts that are lower than the payments made by Treasury to the plaintiffs. As a result, the United States is counterclaiming for the amount of those erroneous excess payments, which total $58,884,366.

## II.    The Court Should Grant Leave to Amend the Pleadings

Before trial, a party may amend its pleadings after the 21-day window of RCFC 15(a)(1) "with the opposing party's consent or with the court's leave." The court "should give leave when justice so requires." RCFC 15(a)(2). The Supreme Court, discussing analogous Fed. R. Civ. P. 15(a), has explained, "If the underlying facts or circumstances relied upon by a [party]

---

(…continued)

applicants include provisions that indicate applicants must provide information necessary for Treasury to "conduct audits, examinations, and evaluations" of its awards. Section 1603 Program Terms and Conditions, *available at https://www.treasury.gov/initiatives/recovery/ Documents/energy-terms-and-conditions.pdf.* As Treasury further explains this requirement:

> each applicant [agrees] that any information provided to Treasury may be shared with other federal entities, including the Internal Revenue Service, as needed by those entities to conduct official agency business including audits, examinations, and evaluations after issuance of a payment in order to confirm that Section 1603 funds were properly obtained. Treasury or other relevant federal entities may take appropriate action, including action to seek repayment, if it is determined that an overpayment was made.

Section 1603 Program, Frequently Asked Questions and Answers, Q & A #13a, *available at https://www.treasury.gov/initiatives/recovery/Documents/A%20FAQs0411%20-%20general.pdf.*

Applicants are also put on notice that overpayments may result in litigation with the Department of Justice: "[F]unds that must be repaid to the Treasury under these rules are considered debts owed to the United States and if not paid when due, will be collected by all available means against any assets of the applicant, including enforcement by the United States Department of Justice." *See* U.S. Treasury Dep't, Payments for Specified Energy Property in Lieu of Tax Credits under the ARRA of 2009 (rev. April 2011) ("Treasury Guidance") at 6.

may be a proper subject of relief, [the party] ought to be afforded an opportunity to test [their] claim on the merits." *Foman v. Davis,* 371 U.S. 178, 182 (1962); *Veridyne Corp. v. United States*, 86 Fed. Cl. 668, 676-77 (2009) (quoting *Foman*).

This court has interpreted the rule to mean that "'leave to amend should be freely permitted absent sufficient explicit reasons indicating that it should be denied.'" *St. Paul Fire & Marine Ins. v. United States*, 31 Fed. Cl. 151, 153 (1994), *citing State of Alaska v. United States*, 15 Cl. Ct. 276, 279 (1988) (*in turn citing Hess v. United States*, 210 Ct. Cl. 483 (1976)).  When courts have denied leave to amend to include a counterclaim, it has been under circumstances in which it was clear that such amendment would alter the course of the litigation or unduly prejudice the opposing party.  The question of prejudice is "the 'touchstone of the inquiry under rule 15(a).'" *Pressure Products Med. Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308, 1320 (Fed.Cir. 2010) (quoting *Lone Star Ladies Invest. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001)).  Simply because a motion to amend is brought after the case is well underway is not indicative of prejudice.  *St. Paul Fire & Marine Ins.,* 31 Fed. Cl. at 154 (quoting *Howey v. United States*, 481 F.2d 1187, 1190-91 (9th Cir. 1973)); *see also Katzin v. United States*, 115 Fed. Cl. 618, 621 (2014) (granting leave to amend where "[t]he case itself is less than two years old, and basic discovery is still underway, although fact discovery has closed within the past few days").  Instead, "[i]n order to support a finding of prejudice, 'the delay must be undue, *i.e.,* it must prejudice the nonmoving party or impose unwarranted burdens on the court." *King v. United States*, 119 Fed. Cl. 51, 53 (2014), *citing Mayeaux v. La. Health Servs. & Indem. Co.,* 376 F.3d 420, 427 (5th Cir.2004).

Thus, for example, the courts have found amendment appropriate in circumstances where the plaintiff has long been on notice of the scope of the government's inquiry, or where the

8

counterclaim was brought after "reasonable and careful investigation into the merits of its counterclaim, after receiving all relevant probative data," as the timing of the request in actuality "reflect[ed] a calculated search for the true facts which will facilitate 'a proper decision on the merits.'" *St. Paul Fire & Marine,* 31 Fed. Cl. at 154, *quoting Foman v. Davis*, 371 U.S. 178, 181-82 (1962); *see also Meyer Grp., Ltd. v. United States,* 115 Fed. Cl. 645, 650 (2014) (counterclaims allowed where they "would not unduly broaden the issues in contention"); *compare King*, 119 Fed. Cl. at 53 (2014) (counterclaims denied when they "would fundamentally alter the nature of the case at this late date.").

Defendant's counterclaims will not cause undue prejudice, because they do not alter the course of the litigation, and there was no undue delay in bringing them. The counterclaims do not put additional burdens on the court or prejudice plaintiffs.

### A.   Defendant's Counterclaims Do Not Alter the Course of Litigation

Permitting the counterclaims will not alter the course of the litigation. The parties have long known the issues presented by this case, and those issues are not altered by defendant pleading its counterclaims after factual discovery and expert valuation. As recounted above, the parties have consistently described the issue as the proper valuation of plaintiffs' eligible basis under §1603. The parties were always aware of the likelihood that expert valuations would be relied on in this case, and defendant indicated early on that it may have counterclaims as a result of discovery. Thus, it is no surprise that defendant now has counterclaims to assert.

Now that the parties have put forward independent expert valuations and further developed their positions in rebuttal reports, those valuations define the bounds of the parties' positions and offer frameworks in which the Court can decide the ultimate question of the value of the eligible assets for purposes of calculating the correct § 1603 payment.

9

The fundamental question remains the same.  With or without counterclaims, both parties are asking the Court to decide plaintiffs' eligible basis in each specified energy property and thus their appropriate award under §1603.  The counterclaims would allow the Court to resolve all the issues that flow from that determination.  Without the counterclaims, if the Court held that defendant's expert's valuations were correct (or simply that plaintiffs failed to meet their burdens), the United States would need to separately seek recovery of the overpayment of §1603 funds.  With the counterclaims, the case is not altered, but the Court can efficiently resolve the entire dispute.[4]

### B.   Defendant Is Pleading Its Counterclaims Without Undue Delay

Here, defendant's counterclaims could not have been brought earlier.  Indeed, the Court itself has recognized the need to develop the factual background in these cases prior to presenting the ultimate issues for decision.  Most critically, the Court found in granting defendant's 56(d) motion that "factual questions arise regarding the valuation of the individual assets acquired."  (Dkt. 37, reported at 117 Fed. Cl. 369, 374 (2014)).  As the Court recognized, Treasury's work at the application stage was insufficient to come to a conclusion on the appropriate valuation of the eligible basis of plaintiffs' specific energy property.

Full discovery, including expert valuations, was required.  During discovery, defendant developed the facts to answer questions relevant to valuation that were recognized by the Court.  Only then could our expert analyze the facts and put forward his conclusions regarding the valuation of the eligible properties.  That valuation forms the basis of the United States' counterclaims.  As the Court explained in its decision permitting discovery:

---

[4] If no counterclaims are permitted, the United States would be forced to bring suit against plaintiffs to recover any amount the Court might determine plaintiffs had not been eligible to receive.

> Plaintiffs supplied Treasury with asset schedules identifying which property was grant-eligible, but this provided only Plaintiffs' representations of each asset's valuation and qualification status. The Government is entitled to discovery to make its own determination.

(*Id.* at 374.)  With the benefit of fact discovery, the United States' expert witness has recently made such a determination.

In short, defendant was unable to assert a specific valuation in this lawsuit until our expert's valuation was completed.  That process has only recently completed.  Now, the United States should be permitted to counterclaim to put the entire amount at issue before the Court.

## CONCLUSION

For the foregoing reasons, the Court should grant this motion for leave and enter the attached amended answers in these consolidated cases:

- *Alta Wind I Owner-Lessors C and D v. United States*, No. 13-402
- *Alta Wind II Owner-Lessors A-E v. United States*, No. 13-917
- *Alta Wind III Owner-Lessors A-D v. United States*, No. 13-972
- *Alta Wind IV Owner-Lessors A and B v. United States*, No. 13-935
- *Alta Wind IV Owner-Lessors C and D v. United States*, No. 14-174
- *Alta Wind V Owner-Lessors A and B v. United States*, No. 14-93
- *Alta Wind V Owner-Lessors C and D v. United States*, No. 14-175
- *Mustang Hills LLC v. United States*, No. 14-47

11

Respectfully submitted,

December 16, 2015

*s/ Michael J. Ronickher*
MICHAEL J. RONICKHER
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
Tel:  (202) 616-9085
Fax: (202) 514-9440
Michael.J.Ronickher@usdoj.gov

CAROLINE D. CIRAOLO
   Acting Assistant Attorney General
DAVID I. PINCUS
   Chief, Court of Federal Claims Section
G. ROBSON STEWART
   Assistant Chief, Court of Federal Claims Section
MIRANDA BUREAU
   Trial Attorney, Court of Federal Claims Section
MARGARET E. SHEER
   Trial Attorney, Court of Federal Claims Section

December 16, 2015

*s/ G. Robson Stewart*
Of Counsel

12